NO. 07-01-0181-CR


NO. 07-01-0182-CR


NO. 07-01-0183-CR


NO. 07-01-0184-CR


NO. 07-01-0185-CR


NO. 07-01-0186-CR


NO. 07-01-0187-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



NOVEMBER 27, 2001



______________________________




JONATHAN CARY NICKELS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NOS. 43,449-B, 43,450-B, 43,060-B, 43,061-B, 43,062-B, 43,063-B, & 43,064-B;


HONORABLE JOHN BOARD, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Pursuant to open pleas of guilty, appellant Jonathan Cary Nickels (1) was convicted
of multiple offenses and punishment was assessed accordingly: (1) in cause number
43,449-B for possession of marihuana, a state jail felony--one year confinement; (2) in
cause number 43,450-B for possession of cocaine--ten years confinement; (3) in cause
number 43,060-B for delivery of methamphetamine--ten years confinement; (4) in cause
number 43,061-B for delivery of methamphetamine-ten years confinement; (5) in cause
number 43,062-B for delivery of cocaine-ten years confinement, (6) in cause number
43,063-B for delivery of methamphetamine-30 years confinement, and (7) in cause
number 43,064-B for delivery of methamphetamine-30 years confinement. In presenting
these appeals, counsel has filed an Anders (2) brief in support of a motion to withdraw. 
Based upon the rationale expressed herein, the motion to withdraw is granted and each
judgment is affirmed.

 In support of his motion to withdraw, counsel has certified that he has diligently
reviewed the records and, in his opinion, the records reflect no reversible errors or
grounds upon which appeals can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Monroe v. State, 671 S.W.2d 583, 585
(Tex.App.--San Antonio 1984, no pet.). Thus, he concludes the appeals are frivolous and
without merit. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978),
counsel has candidly discussed why, under the controlling authorities, there are no errors
in the court's judgments. Counsel has also shown that he sent a copy of the brief to
appellant, and informed appellant that, in counsel's view, the appeals are without merit. 
In addition, counsel has demonstrated that he notified appellant of his right to review the
records and file a pro se brief if he desired to do so. Appellant filed a pro se brief in
support of a motion to vacate, set aside, or correct a sentence. The State did not favor us
with a brief.

 A review of each record discloses that a confidential informant introduced appellant
to two undercover agents on January 7, 2000. Approximately 2.5 grams of
methamphetamine were purchased from appellant by Agent Redden and his partner. The
agents made subsequent purchases of methamphetamine and cocaine from appellant as
follows: 3.8 grams of methamphetamine on January 13, 2000, 2.1 grams of cocaine on
February 18, 2000, 8.5 grams of methamphetamine on March 3, 2000, 7.1 grams of
cocaine on March 30, 2000, and 7.7 grams of methamphetamine on April 19, 2000. During
the February 18 purchase appellant indicated to the agents that he could obtain
untraceable weapons to sell to them and on March 3, the agents purchased a sawed-off
shotgun in addition to cocaine. 

 On September 25, 2000, ATF officers and Agent Redden served a federal warrant
on appellant for firearm violations. Redden entered appellant's home in an undercover
capacity and was led to the bedroom by appellant's girlfriend. Appellant and his infant son
were laying on the bed next to an open diaper bag. Redden noticed a plastic bag
containing what appeared to be cocaine on top of the diaper bag. Appellant was informed
that a federal warrant was being served and he was taken into custody. Although his
girlfriend tried to close the diaper bag, a search revealed two plastic bags containing a
total of 41 grams of cocaine and one plastic bag containing a quarter of a pound of
marijuana.

 Appellant was charged with seven separate offenses involving either possession
or delivery of narcotics. He entered pleas of guilty to all charges with no agreement on
punishment and evidence was heard with regard to sentencing. Agent Redden and his
partner testified about appellant's status as a mid-level drug dealer. Redden testified that
he would page appellant and set up a meeting to purchase narcotics. Appellant would
then meet with his supplier to obtain what Redden had requested.

 Appellant testified that he was a drug user and tried to leave an impression that he
was merely a runner for his supplier. Although he did not consider himself a dealer, he
admitted selling drugs to the agents at higher than usual prices in order to pay his supplier
and have money left to support his baby. Although appellant claimed that the narcotics
were never in his home and that he met with his supplier to obtain them, he could not
convincingly explain why he was in possession of 41 grams of cocaine when he was
arrested on September 25. He testified that he had that amount in his possession in
anticipation that Redden would contact him again as he had done regularly in the past. 
However, Redden and appellant had not engaged in a transaction since April. Appellant
expressed regret and remorse for his actions and admitted to being a "stupid" criminal. 
However, when questioned whether he was aware that the more drugs he sold to the
agents the more trouble he was in, he replied, "I knew the more I sold, the more time you
get . . . ." He did not request probation and realized he would be punished for his crimes. 

 The State also introduced evidence of appellant's juvenile history which established
several prior convictions and a probation revocation. At the conclusion of the punishment
evidence, the trial court ruled that the evidence clearly showed appellant was a dealer. 
The court also expressed concern that given appellant's criminal history, he had not taken
advantage of the numerous chances he had been given. Concluding that appellant had
made "bad choices," he was sentenced to one year confinement for a state jail felony, four
ten-year sentences for second degree felonies, and two 30-year sentences for first degree
felonies all to run concurrently.

 Counsel presents three arguable points on appeal, to wit: (1) ineffective assistance
of counsel, (2) voluntariness of appellant's pleas, and (3) abuse of discretion in
sentencing. However, after a discussion of the evidence and legal authorities, counsel
candidly concedes that no reversible error is presented in any of the appeals.

 To establish ineffective assistance of counsel appellant must establish that (1)
counsel's conduct was deficient (i.e., fell below an objective standard of reasonableness),
and (2) there is a reasonable probability that but for counsel's deficient performance, the
result of the proceeding would have been different. Strickland v. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Cr.App. 1986). A strong presumption exists that defense counsel's conduct falls
within a wide range of reasonable representation. Strickland, 466 U.S. at 690, 104 S.Ct.
at 2064, 80 L.Ed.2d at 695; Dewberry v. State, 4 S.W.3d 735, 757 (Tex.Cr.App. 1999),
cert. denied, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). To sustain a
challenge of ineffective assistance of counsel, it must be firmly founded in the record. 
Mercado v. State, 615 S.W.2d 225, 228 (Tex.Cr.App. 1981). If the record is silent
regarding any alleged ineffectiveness of counsel, appellant cannot overcome the
presumption that counsel's conduct fell within a wide range of reasonable professional
representation.

 In most instances, the most effective way to demonstrate ineffective assistance of
counsel is by presenting evidence at a hearing on a motion for new trial. See generally
McCain v. State, 995 S.W.2d 229, 245 n.9 (Tex.App.-Houston [14th Dist.] 1999, pet.
denied) (discussing ineffective assistance during voir dire). However, here, appellant did
not file motions for new trial and the records before us are silent regarding any alleged
ineffectiveness by counsel. Thus, no reversible error is presented on the ground of
ineffective assistance of counsel.

 Because appellant's guilty pleas were not entered pursuant to felony plea 
bargains, we can review whether they were involuntary. See Cooper v. State, 45 S.W.3d
77 (Tex.Cr.App. 2001) (holding that voluntariness of a plea may not be raised on appeal
from a plea-bargained felony conviction). When the record shows that a defendant was
properly admonished, there is a prima facie showing of a knowing and voluntary guilty
plea. Ex parte Gibauitch, 688 S.W.2d 868, 871 (Tex.Cr. App. 1985). The burden then
shifts to the defendant to establish that he plead guilty without understanding the
consequences of his plea and, consequently, suffered harm. Tex. Code Crim. Proc. Ann.
art. 26.13(c) (Vernon 1989). Gibauitch, 688 S.W.2d at 871. In reviewing the voluntariness
of a defendant's guilty plea, we review the entire record. Martinez v. State, 981 S.W.2d
195, 197 (Tex.Cr.App. 1998) (en banc). 

 The record reflects that appellant was admonished by the trial court prior to the
presentation of punishment evidence. Appellant informed the trial court that his pleas were
voluntary and that his judicial confessions were signed of his own free will. He also signed
written admonishments acknowledging that he was aware of the consequences of his
pleas. Because appellant was properly admonished, it was incumbent upon him to show
that he entered his guilty pleas without understanding the consequences thereof, and thus
suffered harm. However, there is nothing in the records before us to indicate that
appellant was induced into pleading guilty or that he was unaware of the consequences
of his pleas. Therefore, no reversible error exists on the basis of appellant's guilty pleas.

 Counsel also concedes that no reversible error is shown in the sentences imposed
by the trial court. Generally, a penalty imposed within the range of punishment established
by the Legislature will not be disturbed on appeal. Flores v. State, 936 S.W.2d 478
(Tex.App.-Eastland 1996, pet. ref'd). Appellant received a one-year sentence for the state
jail felony of possession of marihuana of five pounds or less but more than four ounces. (3)
A state jail felony is punishable by confinement for not more than two years or less than
180 days. (4) Four separate ten-year sentences were imposed for (1) possession of cocaine
of four grams or more but less than 200; (2) and (3) delivery of methamphetamine of one
gram or more but less than four; and (4) delivery of cocaine of one gram or more but less
than four. (5) These offenses constitute second degree felonies punishable by not more than
20 years or less than two years. (6) Appellant was sentenced to two 30-year sentences for
delivery of methamphetamine of four grams or more but less than 200, which are first
degree felonies with a punishment range of not more than 99 years or less than five years
confinement. (7) All seven sentences imposed by the trial court were within the range of
punishment established by the Legislature and thus, no abuse of discretion is shown. 
Moreover, appellant's sentences were half of the maximum recommended range of
punishment in the first five offenses and on the low end of the range of punishment for the
two first degree felonies.

 By his pro se brief in support of his motion, appellant mirrors appellate counsel's
arguments on ineffective assistance of counsel and the voluntariness of his guilty pleas. 
Because we have already reviewed these contentions, we will not repeat our analysis. 
However, citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 131 L.Ed. 2d 490 (1963),
appellant contends that his right to due process under the Fourteenth Amendment was
violated by the prosecution for failing to disclose favorable evidence. We disagree. In
Brady, the Supreme Court held that the prosecution violates due process when it
suppresses evidence in its possession favorable to an accused "where the evidence is
material either to guilt or punishment." Id. at 87. Evidence is material if there is a
reasonable probability that, had the evidence been disclosed to the defense, the outcome
of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 676,
105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

 Specifically, appellant contends the prosecution was in possession of a statement
made by Jonathan Burch, the confidential informant who introduced appellant to the
agents, that might have proven his innocence. He asserts that Burch and Agent Redden
had their own "agenda" and that Burch made a statement to Redden during an interview
after appellant was arrested that if disclosed would have changed the outcome of his
convictions. The record before us does not establish any statements made by Burch to
Agent Redden that would invoke Brady. Furthermore, appellant never claimed to be
innocent of the charged offenses. He testified that he was a "stupid" criminal and that he
knew he would have to be punished for what he had done. Appellant has not established
that material evidence, if any, was withheld from him by the prosecution or that it would
have resulted in a different outcome. 

 Appellant also contends that his appellate counsel is ineffective and thus he has
been denied his Sixth Amendment right to counsel on appeal. He argues that appellate
counsel "dropped the ball" in retaliation to his request for appellate counsel's resume. 
Citing Penson v. Ohio, 488 U.S. 75, 84-85, 102 L.Ed.2d 300, 109 S.Ct. 346 (1988),
appellant claims "[t]he right to be represented by counsel on direct appeal from a
conviction as well as at the criminal trial is among the most fundamental rights." He also
relies on Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), which
held that the Fourteenth Amendment guarantees a criminal appellant the right to counsel
on a first appeal as of right. However, four years after Douglas, the Court decided Anders
v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which implemented
safeguards for first appeals by indigent defendants. Anders and Penson require that an
indigent defendant be afforded assistance of counsel on appeal only after a separate
inquiry by an appellate court determines that arguably meritorious grounds for reversal of
a conviction exist. Appellate counsel has complied with the procedural safeguards of
Anders and Penson. Nevertheless, appellant requests that we appoint new counsel to
represent him on appeal from his seven convictions. The Legislature has given the trial
court, not this Court, the responsibility for appointing counsel to represent indigent
defendants as well as the authority to relieve or replace counsel. See Enriquez v. State,
999 S.W.2d 906, 907 (Tex.App.-Waco 1999, no pet.). Appellant's pro se contentions are
overruled. 

 We have also made an independent examination of the entire record to determine
whether there are any arguable grounds which might support the appeal. See Penson v.
Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); Stafford v. State, 813 S.W.2d
503, 511 (Tex.Cr.App. 1991). We have found no such grounds and agree with counsel
that the appeal is without merit and is, therefore, frivolous. Currie v. State, 516 S.W.2d
684 (Tex.Cr.App. 1974); Lacy v. State, 477 S.W.2d 577, 578 (Tex.Cr.App. 1972).

 Accordingly, counsel's motion to withdraw is hereby granted and the judgments of
the trial court are affirmed.

 Don H. Reavis


 Justice

 



Do not publish. 










1. Although the judgments reflect appellant's surname as Nickles, his pro se brief
reflects his surname is Nickels.
2. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
3. See Tex. Health & Safety Code Ann. § 481.121(b)(3) (Vernon Supp. 2002).
4. See Tex. Penal Code Ann. § 12.35(a) (Vernon 1994).
5. See Tex. Health & Safety Code Ann. §§ 481.102(3)(D) and 481.102(6) (Vernon
Supp. 2002); see also §§ 481.112(c) and 481.115(d).
6. Tex. Penal Code Ann. § 12.33(a) (Vernon 1994).
7. See Tex. Health & Safety Code Ann. § 481.112(d) (Vernon Supp. 2002), and Tex.
Penal Code Ann. § 12.32(a) (Vernon 1994).


e">
          As at trial, appellant concedes on appeal that he committed a theft of the shoes. 
Appellant also concedes Dusty Johnson incurred bodily injury during their encounter in the
parking lot. Our focus is on the evidence supporting the accusation that while in the course
of committing theft of the shoes, and with intent to obtain and maintain control of them,
appellant intentionally, knowingly, or recklessly caused Johnson’s bodily injury.
          The Penal Code defines the phrase “in the course of committing theft,” in the
robbery statute to include conduct that occurs in immediate flight after the commission of
theft. Tex. Penal Code Ann. § 29.01(1) (Vernon 2003). See Ulloa v. State, 570 S.W.2d
954, 957 (Tex.Crim.App. 1978); Oggletree v. State, 851 S.W.2d 367 (Tex.App.–Houston
[1st Dist.] 1993, pet. ref’d); Chamberlin v. State, 704 S.W.2d 801, 803 (Tex.App.–Dallas
1985, no pet.) (all applying the phrase “course of committing theft”). Here, the testimony
of prosecution witnesses, and even that of appellant, shows that his encounter with
Johnson occurred as appellant fled the store wearing the purloined shoes. The questioned
conduct thus occurred in the course of committing theft. Id. 
Causation
          We turn to the evidence of causation. Appellant argues that even under the State’s
version of the events, there is insufficient evidence that his conduct caused Johnson’s
injuries. We disagree. During his testimony, Johnson identified a photograph showing the
scrape on his arm. Asked how he received the injuries, he responded, “Wrestling with
[appellant].”
          Appellant attempts to minimize the testimony of his wrestling with Johnson,
contending that when clarified, the testimony revealed only that he was on top of Johnson
after Johnson tackled him. Again, we disagree. During his testimony, Johnson referred
several times to the events that occurred when he caught up with appellant in the parking
lot. His initial testimony reads:
          Q:       What did you do?

          A:       I took off running after [appellant], chased him halfway down the parking lot,
and he turned around and swung at me and I ducked, grabbed him by the
legs and we was wrestling on the ground.

          Q:       Let me back up just a second. You indicated you chased him halfway down
the parking lot. During this time, were you saying anything to him?

          A:       I was yelling at him the whole time that I’m in-store loss prevention, to stop,
to stop. He never would stop.

          Q:       Okay. And how close were you when he turned around and swung at you?

          A:       Like within a foot away from him. I mean, I was right behind him.

          Q:       Okay. Was he able to successfully hit you?

          A:       No, sir, I ducked.

          Q:       And what happened then?

          A:       When I ducked, I grabbed him by the legs to wrestle him to the ground, and
we fell. He was on top of me and we was wrestling around. I was trying to get
him back up, and two gentlemen that were customers of the store came to
help me assist him up.

          * * * *

          Q:       Okay. As you were on the ground, what happened?

          A:       We were wrestling around, just trying to get control of the situation, trying to
get him to come back to the office so we can call the police and get
everything under control.
 
          Johnson referred several other times to events that occurred “after we got through
wrestling on the ground.”
          The testimony appellant says “clarified” the references to wrestling occurred in this
exchange during cross-examination:
          Q:       How long did your wrestling match take?

          A:       Once again, I wasn’t keeping up with time. I mean, it seemed like it took a
couple of minutes, but it probably took only a minute or two, I don’t -- I don’t
know.

          Q:       Was [appellant] wrestling you back?

          A:       It seemed like he was.

          Q:       Well, I mean, could you feel him exerting force on you some how?

          A:       He was - - like I said, when I grabbed his legs, he was laying on top of me,
yes, sir, so he was - - 

          Q:       He was laying on top of you?

          A:       Yes, sir, he was on top of me while we was wrestling around.

          Q:       Well, if you knock him down, is it not unusual for a person to fall on you - -

          A:       It depends on - -

          Q:       - - if you tackle them?

          A:       It depends on how you tackle, yes, sir.
 
          Appellant argues Johnson here testified that the only force being exerted by
appellant during the wrestling was that caused by appellant’s position on top of Johnson. 
We disagree that this exchange must be read to indicate that appellant had no participation
in the wrestling beyond falling on top of Johnson. Moreover, appellant’s argument ignores
the testimony of Albert Gonzales, who, when asked if appellant was “wrestling back” with
Johnson, responded, “Yes, he was trying to get away.” 
          Appellant’s argument requires application of Penal Code § 6.04(a), which provides
that “[a] person is criminally responsible if the result would not have occurred but for his
conduct, operating either alone or concurrently with another cause, unless the concurrent
cause was clearly sufficient to produce the result and the conduct of the actor clearly
insufficient.”


 Tex. Penal Code Ann. § 6.04 (Vernon 2003). 
          Under § 6.04, a “but for” causal connection must be established between appellant’s
conduct and the resulting harm. Robbins v. State, 717 S.W.2d 348, 351 (Tex.Crim.App.
1986). If concurrent causes are present, § 6.04 provides two possible combinations to
satisfy the “but for” requirement: (1) the defendant’s conduct may be sufficient by itself to
have caused the harm, regardless of the existence of the concurrent cause; or (2) the
defendant’s conduct and the other cause together may be sufficient to have caused the
harm. If, however, the additional cause is clearly sufficient by itself to produce the result
and the defendant’s conduct alone is clearly insufficient, the required causal connection
is not present. Id.  
          As noted, Johnson testified he sustained his injuries wrestling with appellant. We
focus therefore on the evidence concerning their wrestling.


 Applying the analysis in
Robbins to that evidence leads to the conclusion appellant’s role in their confrontation
would not have been sufficient by itself to cause Johnson’s injuries; the injuries instead
were caused by the concurrence of the actions of both. We must next ask whether
Johnson’s conduct was clearly sufficient by itself to produce his injuries and appellant’s
conduct alone clearly insufficient. Robbins, 717 S.W.2d at 351. Except for Johnson’s
statement attributing his injuries to his wrestling with appellant, the State’s evidence does
not indicate how the injuries occurred.


 Nor does evidence show at what point during their
wrestling Johnson incurred his injuries. We conclude the evidence shows Johnson’s
injuries would not have occurred but for appellant’s conduct, operating concurrently with
Johnson’s own conduct, and does not show that Johnson’s conduct alone was clearly
sufficient, and appellant’s conduct alone clearly insufficient, to produce the injuries. 
Culpable Mental State 
          We turn now to the evidence supporting the jury’s finding appellant acted with one
of the three culpable mental states required for the offense of robbery. Lane v. State, 763
S.W.2d 785, 787 (Tex.Crim.App. 1989). Under Penal Code § 29.02(a)(1), the bodily injury
element of robbery may be committed intentionally, knowingly or recklessly. Here, the
indictment and court’s charge included all three mental states.
          Texas Penal Code § 6.03 defines each of these terms and the court correctly
included these definitions in its charge to the jury. A person acts “intentionally” or “with
intent”, with respect to the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. Tex. Penal
Code Ann. § 6.03(a).


 A person acts “knowingly” or “with knowledge” with respect to the
nature of his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b). A person acts
“recklessly” or “is reckless” with respect to circumstances surrounding his conduct or the
result of his conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur. The risk must be of
such a nature and degree that its disregard constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as viewed from
the actor’s standpoint. Tex. Penal Code Ann. § 6.03(c). 
          Establishment of culpable mental states is almost invariably grounded on inferences
to be drawn by the fact finder from the attendant circumstances. Lane, 763 S.W.2d at
787. Just as proof of bodily injury is not dependent on the severity of the violence used,
so long as some resulting physical pain, illness, or any impairment of physical condition
can be identified, the threshold of proof necessary to support a jury finding of an
awareness that such a result is reasonably certain to occur is concomitantly low. Id. 
          Here the attendant circumstances include appellant’s admitted theft of the shoes,
his flight from the store, Johnson’s pursuit of appellant while identifying himself, appellant’s
swing at Johnson and his wrestling with Johnson in an effort to escape. Deliberating the
intent with which appellant was acting, the jury also could have considered his
acknowledged awareness that Johnson was trying to stop him because of his theft. Courts
have found evidence sufficient to establish that defendants caused bodily injury
intentionally or knowingly in other instances involving violence during flight following a store
theft. Henry v. State, 800 S.W.2d 612, 614 (Tex.App.–Houston [14th Dist.] 1990, no pet.);
Candelaria v. State, 776 S.W.2d 741, 743 (Tex.App.–Corpus Christi 1989, pet. ref’d). See 
Matlock v. State, 20 S.W.3d 57, 62 (Tex.App.–Texarkana 2000, pet. ref’d) (also applying
Lane in store theft case). From these circumstances, we find the jury rationally could infer
appellant acted with an awareness that his conduct was reasonably certain to cause bodily
injury to Johnson. 
          Having reviewed the entire record, we find a rational trier of fact could have found
the essential elements of the crime of robbery beyond a reasonable doubt and that the
evidence is neither so weak that the jury’s verdict seems clearly wrong and manifestly
unjust, nor contradicted by other evidence such that the jury’s verdict is against the great
weight and preponderance of the evidence. We therefore find that the evidence is legally
and factually sufficient to support appellant’s conviction for the offense of robbery. We
overrule appellant’s points of error and affirm the trial’s court judgment.James T. Campbell

                                                                                     Justice





Do not publish.