NO. 07-06-0015-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 25, 2008
_____

ALVIN GABRIEL COFFEE, SR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 50,921-D; HONORABLE DON EMERSON, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Alvin Gabriel Coffee, Sr. appeals his conviction by jury of the offense of robbery, enhanced, and his sentence of eight years confinement in the Institutional Division of the Texas Department of Criminal Justice.  By two points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction.  We affirm.

Background

A June 2005 indictment alleged that on May 11, 2005, appellant, "while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally, knowingly, or recklessly cause[d] bodily injury to Dusty Johnson."[1] The indictment also contained an enhancement paragraph, setting forth appellant's prior felony conviction for aggravated assault.

Appellant pled not guilty. In its case in chief at trial, the State presented three witnesses. The State's evidence was that on the day in question, while working as a loss prevention officer at an Amarillo Wal-Mart, Dusty Johnson watched appellant for several minutes as he tried on shoes in the shoe department. Johnson then saw appellant put on a new pair of shoes, leave his shoes in a basket at the end of the store's aisle, and walk to a register. Appellant stopped at a register with what appeared to be a gift card in his hand, but then took off "in a dead sprint" out the front doors wearing the new shoes without paying for them.

Johnson ran after appellant, yelling, "Stop, loss prevention." Appellant never stopped. Johnson requested the help of other individuals, including another loss prevention officer Tiffany Philley, and chased appellant into the parking lot. As Johnson got close, appellant turned around and took a swing at him. Johnson ducked, grabbed appellant by

---

[1] See Tex. Penal Code Ann. § 29.02 (Vernon 1994). This is a second degree felony punishable by imprisonment for any term of not more than 20 years or less than 2 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.33 (Vernon 2003). Appellant's punishment was enhanceable pursuant to Tex. Penal Code Ann. § 12.42 (Vernon 2007).

the legs and they wrestled on the ground. Philley said she followed Johnson and appellant through the parking lot but did not see appellant swing at Johnson. By the time she reached them, appellant was on top of Johnson. She pulled appellant off. Another Wal-mart employee, Albert Gonzales, was walking through the parking lot. He said he saw the chase and "[w]henever [appellant] turned around to swing at [Johnson], [Johnson] tackled him and wrestled with him for a few minutes." The employees, with the help of two unnamed customers, eventually restrained appellant. Johnson sustained minor injuries, including a cut or scrape on his right arm.

Appellant testified, presenting a somewhat different version of the events. He acknowledged his theft of the shoes. He said he decided to take them when he learned the remaining value of his gift card was not adequate to pay for them. He said he walked out of the store and, when he got to the middle of the parking lot, started running because it "seemed like the thing to do." When he was almost to the end of the parking lot, he heard "Stop . . . if you don't stop, I'm going to charge you with robbery." Appellant stated that he then stopped, turned around, and walked back. He testified that he saw Johnson coming at him. He thought the employee was trying to hurt him by diving at his knees, so he moved sideways and Johnson just "slid on by." Appellant denied swinging at Johnson, and said he "never did touch him." Looking at the photograph of Johnson's injuries, he said Johnson "probably hurt himself when he slid." Appellant also denied that he wrestled or scuffled with Johnson.

By the court's charge, the jury was permitted to find appellant not guilty, guilty of the indicted offense or guilty of the lesser offense of theft of property under $50.00. The jury

3

found him guilty of robbery with bodily injury as alleged in the indictment. During the punishment proceeding, appellant pled "true" to the enhancement paragraph of the indictment. The jury assessed appellant's punishment at a term of eight years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## Analysis

*Sufficiency of the Evidence*

Via two points of error, appellant argues that the evidence is legally and factually insufficient to support his conviction. In conducting a legal sufficiency review, we must determine whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)*; McKinney v. State,* 207 S.W.3d 366, 374 (Tex.Crim.App. 2006); *Fowler v. State,* 65 S.W.3d 116, 118 (Tex.App.–Amarillo 2001, no pet.). A reviewing court considers all the evidence admitted that will sustain the conviction, including improperly admitted evidence. *Hernandez v. State,* 190 S.W.3d 856, 863-64 (Tex.App.–Corpus Christi 2006, no pet.). As fact finder, the jury is the exclusive judge of the credibility of witnesses and the weight to be afforded to their testimony. *Id.* The jury is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony. *Id.* We must uphold the jury's verdict against a legal sufficiency challenge unless it is irrational or unsupported by more than a mere modicum of evidence. *Fowler,* 65 S.W.3d at 118 (*citing Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia*. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence, but now in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference. *Marshall*, 210 S.W.3d at 625; *Johnson*, 23 S.W.3d at 9. When there is a conflict in the evidence, to find it factually insufficient we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417.

As at trial, appellant concedes on appeal that he committed a theft of the shoes. Appellant also concedes Dusty Johnson incurred bodily injury during their encounter in the parking lot. Our focus is on the evidence supporting the accusation that while in the course of committing theft of the shoes, and with intent to obtain and maintain control of them, appellant intentionally, knowingly, or recklessly caused Johnson's bodily injury.

The Penal Code defines the phrase "in the course of committing theft," in the robbery statute to include conduct that occurs in immediate flight after the commission of theft. Tex. Penal Code Ann. § 29.01(1) (Vernon 2003). *See Ulloa v. State,* 570 S.W.2d 954, 957 (Tex.Crim.App. 1978); *Oggletree v. State,* 851 S.W.2d 367 (Tex.App.–Houston [1st Dist.] 1993, pet. ref'd); *Chamberlin v. State,* 704 S.W.2d 801, 803 (Tex.App.–Dallas 1985, no pet.) (all applying the phrase "course of committing theft"). Here, the testimony of prosecution witnesses, and even that of appellant, shows that his encounter with Johnson occurred as appellant fled the store wearing the purloined shoes. The questioned conduct thus occurred in the course of committing theft. *Id.*

*Causation*

We turn to the evidence of causation. Appellant argues that even under the State's version of the events, there is insufficient evidence that his conduct caused Johnson's injuries. We disagree. During his testimony, Johnson identified a photograph showing the scrape on his arm. Asked how he received the injuries, he responded, "Wrestling with [appellant]."

Appellant attempts to minimize the testimony of his wrestling with Johnson, contending that when clarified, the testimony revealed only that he was on top of Johnson after Johnson tackled him. Again, we disagree. During his testimony, Johnson referred several times to the events that occurred when he caught up with appellant in the parking lot. His initial testimony reads:

6

Q:    What did you do?

A:    I took off running after [appellant], chased him halfway down the parking lot, and he turned around and swung at me and I ducked, grabbed him by the legs and we was wrestling on the ground.

Q:    Let me back up just a second. You indicated you chased him halfway down the parking lot. During this time, were you saying anything to him?

A:    I was yelling at him the whole time that I'm in-store loss prevention, to stop, to stop. He never would stop.

Q:    Okay. And how close were you when he turned around and swung at you?

A:    Like within a foot away from him. I mean, I was right behind him.

Q:    Okay. Was he able to successfully hit you?

A:    No, sir, I ducked.

Q:    And what happened then?

A:    When I ducked, I grabbed him by the legs to wrestle him to the ground, and we fell. He was on top of me and we was wrestling around. I was trying to get him back up, and two gentlemen that were customers of the store came to help me assist him up.

* * * *

Q:    Okay. As you were on the ground, what happened?

A:    We were wrestling around, just trying to get control of the situation, trying to get him to come back to the office so we can call the police and get everything under control.

Johnson referred several other times to events that occurred "after we got through wrestling on the ground."

The testimony appellant says "clarified" the references to wrestling occurred in this exchange during cross-examination:

7

Q:     How long did your wrestling match take?

A:     Once again, I wasn't keeping up with time. I mean, it seemed like it took a couple of minutes, but it probably took only a minute or two, I don't -- I don't know.

Q:     Was [appellant] wrestling you back?

A:     It seemed like he was.

Q:     Well, I mean, could you feel him exerting force on you some how?

A:     He was - - like I said, when I grabbed his legs, he was laying on top of me, yes, sir, so he was - -

Q:     He was laying on top of you?

A:     Yes, sir, he was on top of me while we was wrestling around.

Q:     Well, if you knock him down, is it not unusual for a person to fall on you - -

A:     It depends on - -

Q:     - - if you tackle them?

A:     It depends on how you tackle, yes, sir.

Appellant argues Johnson here testified that the only force being exerted by appellant during the wrestling was that caused by appellant's position on top of Johnson. We disagree that this exchange must be read to indicate that appellant had no participation in the wrestling beyond falling on top of Johnson. Moreover, appellant's argument ignores the testimony of Albert Gonzales, who, when asked if appellant was "wrestling back" with Johnson, responded, "Yes, he was trying to get away."

Appellant's argument requires application of Penal Code § 6.04(a), which provides that "[a] person is criminally responsible if the result would not have occurred but for his

8

conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."[2]  Tex. Penal Code Ann.  § 6.04 (Vernon 2003).

Under § 6.04, a "but for" causal connection must be established between appellant's conduct and the resulting harm.  *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App. 1986).  If concurrent causes are present, § 6.04 provides two possible combinations to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of the concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm.  If, however, the additional cause is clearly sufficient by itself to produce the result *and* the defendant's conduct alone is clearly insufficient, the required causal connection is not present.  *Id.*

As noted, Johnson testified he sustained his injuries wrestling with appellant. We focus therefore on the evidence concerning their wrestling.[3]  Applying the analysis in

---

[2] Conduct is defined as an act or omission and its accompanying mental state.  Tex. Penal Code Ann. § 1.07(a)(10) (Vernon 2003).

[3] Appellant's brief adopts an approach to causation that examines his actions by narrow segments, considering his role in the wrestling as "conduct" separate from his running from the store, and separate from his turning and swinging at Johnson. We limit our focus on causation to the evidence concerning the wrestling between appellant and Johnson only to address appellant's argument. By doing so, we express no opinion on the merits of appellant's approach. *See generally Williams v. State*, 235 S.W.3d 742, 764-65 (Tex.Crim.App. 2007) (discussing application of foreseeability to analysis under § 6.04). *See also Robbins*, 717 S.W.2d at 351 n.2 (noting that, under § 6.04, at least in some circumstances "[a]n actor's conduct is not broken down such that it constitutes separate "causes").

*Robbins* to that evidence leads to the conclusion appellant's role in their confrontation would not have been sufficient by itself to cause Johnson's injuries; the injuries instead were caused by the concurrence of the actions of both. We must next ask whether Johnson's conduct was clearly sufficient by itself to produce his injuries *and* appellant's conduct alone clearly insufficient. *Robbins,* 717 S.W.2d at 351. Except for Johnson's statement attributing his injuries to his wrestling with appellant, the State's evidence does not indicate how the injuries occurred.[4] Nor does evidence show at what point during their wrestling Johnson incurred his injuries. We conclude the evidence shows Johnson's injuries would not have occurred but for appellant's conduct, operating concurrently with Johnson's own conduct, and does not show that Johnson's conduct alone was clearly sufficient, and appellant's conduct alone clearly insufficient, to produce the injuries.

*Culpable Mental State*

We turn now to the evidence supporting the jury's finding appellant acted with one of the three culpable mental states required for the offense of robbery. *Lane v. State,* 763 S.W.2d 785, 787 (Tex.Crim.App. 1989). Under Penal Code § 29.02(a)(1), the bodily injury element of robbery may be committed intentionally, knowingly or recklessly. Here, the indictment and court's charge included all three mental states.

Texas Penal Code § 6.03 defines each of these terms and the court correctly included these definitions in its charge to the jury. A person acts "intentionally" or "with

---

[4] Appellant's testimony sheds no light on that question because he testified there was no wrestling.

10

intent", with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a).[5] A person acts "knowingly" or "with knowledge" with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b). A person acts "recklessly" or "is reckless" with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. Tex. Penal Code Ann. § 6.03(c).

Establishment of culpable mental states is almost invariably grounded on inferences to be drawn by the fact finder from the attendant circumstances. *Lane,* 763 S.W.2d at 787. Just as proof of bodily injury is not dependent on the severity of the violence used, so long as some resulting physical pain, illness, or any impairment of physical condition can be identified, the threshold of proof necessary to support a jury finding of an awareness that such a result is reasonably certain to occur is concomitantly low. *Id.*

---

[5]*See* Tex. Penal Code Ann. § 6.03 (Vernon 1994).

Here the attendant circumstances include appellant's admitted theft of the shoes, his flight from the store, Johnson's pursuit of appellant while identifying himself, appellant's swing at Johnson and his wrestling with Johnson in an effort to escape. Deliberating the intent with which appellant was acting, the jury also could have considered his acknowledged awareness that Johnson was trying to stop him because of his theft. Courts have found evidence sufficient to establish that defendants caused bodily injury intentionally or knowingly in other instances involving violence during flight following a store theft. *Henry v. State*, 800 S.W.2d 612, 614 (Tex.App.–Houston [14th Dist.] 1990, no pet.); *Candelaria v. State*, 776 S.W.2d 741, 743 (Tex.App.–Corpus Christi 1989, pet. ref'd). *See Matlock v. State,* 20 S.W.3d 57, 62 (Tex.App.–Texarkana 2000, pet. ref'd) (also applying *Lane* in store theft case). From these circumstances, we find the jury rationally could infer appellant acted with an awareness that his conduct was reasonably certain to cause bodily injury to Johnson.

Having reviewed the entire record, we find a rational trier of fact could have found the essential elements of the crime of robbery beyond a reasonable doubt and that the evidence is neither so weak that the jury's verdict seems clearly wrong and manifestly unjust, nor contradicted by other evidence such that the jury's verdict is against the great weight and preponderance of the evidence. We therefore find that the evidence is legally and factually sufficient to support appellant's conviction for the offense of robbery. We overrule appellant's points of error and affirm the trial's court judgment.

James T. Campbell
Justice

Do not publish.